W. H. YARBOROUGH, ON BEHALF OF HIMSELF AND ALL CITIZENS AND TAX-
PAYERS OF THE STATE OF NORTH CAROLINA, v. NORTH CAROLINA PARK
COMMISSION.

(Filed 21 November, 1928.)

**1. Constitutional Law—Due Process of Law—Law of the Land—Construc-
tion and Operation of Fifth and Fourteenth Amendments.**

In construing the provisions of the Fifth and Fourteenth Amendments
of the Federal Constitution and Article I, section 17, of the State Consti-
tution in relation to taking private property for a public use: *Held*, the
terms "due process of law" and "the law of the land" are substantially
identical terms, the Fifth Amendment being obligatory on the Federal
Government and the Fourteenth Amendment being a restriction upon the
several States.

**2. Eminent Domain—Delegation of Power—North Carolina National Park
Commission.**

The North Carolina National Park Commission is an agency of the
State created by statute, vested with the power of eminent domain, and
not subject to the limitations provided in C. S., 1714, 1715.

**3. Same.**

The act creating the National Park Commission makes the commission
an agency acting for the State to acquire lands for the establishment of
the national park, and to vest the title in the State, and the position
that a statute cannot confer on the Federal Government the right of
condemnation is not affected by the further provision of the statute that
the State may cede the lands so acquired to the Federal Government in
consideration of the public interest of the people of the State in the
establishment of the national park.

**4. Constitutional Law—Due Process of Law; Law of the Land—Eminent
Domain—National Park—Injunctions.**

The exercise of the power of eminent domain by the North Carolina
National Park Commission is not contrary to the "due process" clause
of the Federal Constitution, Fourteenth Amendment, or Article I, sec-
tion 17, of the State Constitution, since notice and an opportunity to be
heard is provided for those whose land is to be taken, and this result is
not affected by the power given in the statute to the Superior Court to
enjoin the owner of such land from changing the existing condition or
character of the land sought to be condemned, since the person against
whom such relief is sought is given ample opportunity for the protection
of his right by the requirements that the clerk issue summons, publish
notice setting forth the filing of the petition, the name of the petitioner
and of every person named in the petition, a brief description of the land,
a statement of the relief demanded, and the return day of the summons,
and until these provisions are complied with no final order or judgment
can be entered, and then only upon such terms as may be just.

**5. Same—Notice and Opportunity to be Heard.**

The Fourteenth Amendment to the Federal Constitution does not control the power of the State to determine the process by which legal rights may be asserted or legal obligations enforced if the method of procedure gives reasonable notice and a fair opportunity to be heard before the issues in condemnation proceedings are decided.

**6. Same—Provision for Compensation.**

The act incorporating the North Carolina National Park Commission in effect provides that the lands of private owners taken for its purpose shall not be acquired until an adequate sum is available for payment for the lands taken, and a restraining order will not issue upon the assumption that the landowners cannot be ultimately paid under this and other provisions of the act.

**7. Eminent Domain—Proceedings to Take Property and Assess Compensation—Persons Who May Sue.**

Only those whose interests in the particular lands sought to be taken for the national park contemplated by chapter 48, Public Laws of 1927, sec. 27, may sue in equity for injunctive relief on the ground that their lands are about to be taken contrary to the provisions of the Fourteenth Amendment to the Federal Constitution and of Article I, section 17, of the Constitution of North Carolina.

**8. Eminent Domain—Nature and Extent of Power—Public Use.**

The provisions of our statute for the acquisition of lands for a national park affects the interest of the people of the State, and though local as to location, is for a public use in contemplation of its acquisition by the State for the purpose outlined in the act. Const., Art. II, sec. 29.

**9. Same.**

The terms "public use" applied to the taking of private lands under condemnation is one for the ultimate determination of the courts in particular instances, and where so established that the use is public, the expediency or necessity for establishing the use is exclusively for the Legislature, subject to the restraint that just compensation shall be made.

**10. Statutes—Enactment, Requisites, and Validity—Constitutional Requirements in Enactment—Public and Private Laws.**

The act creating the North Carolina National Park Commission is a public act and does not fall within the purview of Article II, section 12, requiring notice that application to the General Assembly for the passage of a private act be made.

**11. Taxation—Constitutional Requirements and Restrictions—Power to Lend Credit of State to Person, Association, or Corporation—North Carolina National Park Commission.**

The statute establishing the North Carolina National Park Commission with the certain powers therein enumerated is for the benefit of the public of the State and not that of some third person, and does not fall within the provision of Article V, section 4, of the State Constitution requiring the approval of the voters at an election.

APPEAL by plaintiff from an order of *Clement, J.,* made at October Term, 1928, of FORSYTH, sustaining a demurrer to the complaint.

The defendant is a corporation organized and existing under and by virtue of the laws of North Carolina. The purpose of its incorporation and the scope of its powers are set forth in the act by which it was created. Public Laws 1927, ch. 48. It is therein provided that to enable the defendant to accomplish its purpose and the State to avail itself of the provisions of an act of Congress approved 22 May, 1926, entitled "An act to provide for the establishment of the Shenandoah National Park in the State of Virginia and the Great Smoky Mountains National Park in the States of North Carolina and Tennessee, and for other purposes," and to provide a National Park with its attendant benefits to the entire State, the State Treasurer is authorized, empowered and directed to issue and sell bonds of the State in an amount not exceeding $2,000,000, to be designated "State of North Carolina Park Bonds." Section 5 contains these provisions: "Whenever the North Carolina Park Commission shall request the State Treasurer to make available a specified sum of money for the purposes for which bonds are herein authorized to be issued, it shall be the duty of the State Treasurer to issue bonds or bond anticipation notes pursuant to this act in an amount sufficient to raise the sum so requested."

It is alleged in the complaint that the Park Commission and the Governor and Council of State have made all findings and performed all conditions which are precedent to the issue and sale of the proposed bonds and bond anticipation notes; that the State Treasurer is ready upon request of the Park Commission to pay for the lands to be appropriated, and the Auditor is ready to issue his warrant; and that unless restrained the defendant will perform the duties imposed by the act of 1927 in order to acquire the necessary area and pay the necessary sums out of the funds provided for this purpose. It is further alleged that the defendant has adopted resolutions requesting the State Treasurer to make available the funds for which provision is made in the act of 1927, but has not certified the resolutions to the Treasurer who, though authorized thereto, has taken no action, and will not act in the premises unless the resolutions are certified.

It is alleged that the act of 1927 is unconstitutional for several reasons, but only those given in the appellant's brief are considered in the opinion.

As grounds of its demurrer the defendant says that paragraph 7 of the complaint contains only conclusions of law, and that paragraphs 1 to 6, both inclusive, do not state facts sufficient in law to constitute a cause of action.

The demurrer was sustained and the plaintiff excepted and appealed.

*Efird & Liipfert for plaintiff.*

*Assistant Attorney-General Brooks, Carter & Carter, Varser, Lawrence, Proctor & McIntyre, Attorney-General Brummitt and Assistant Attorney-General Nash for defendant.*

*L. R. Varser, Assistant Attorney-General, and Thomas S. Rollins and Alfred S. Barnard, Amici Curiœ.*

ADAMS, J. The demurrer admits only such relevant facts as are set forth in the complaint and such relevant inferences of fact as are deducible therefrom. It raises an issue of law, but it does not admit conclusions of law or matters of evidence or facts controverting those of which the Court must take judicial notice. *Whitehead v. Telephone Co.,* 190 N. C., 197; *Sexton v. Farrington,* 185 N. C., 339. It may be seen by reference to the statement of facts that the complaint and the demurrer present the question whether the statutes under which the defendant is proceeding (Laws 1927, ch. 48), are in conflict with the organic law of the State or Nation. If they are not, the judgment sustaining the demurrer is free from error; if they are, the demurrer should have been overruled. The case, then, is to be decided on specific constitutional objections.

The appellant contends that the act of 1927 was enacted in breach of the following clauses: "No person shall be deprived of life, liberty or property without due process of law." U. S. Constitution, Fifth Amendment. "Nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." *Ibid.,* Fourteenth Amendment. "No person ought . . . in any manner to be deprived of his life, liberty, or property, but by the law of the land." Constitution of N. C., Art. I, sec. 17. "Due process of law" and "the law of the land" are substantially identical terms. *Parish v. Cedar Co.,* 133 N. C., 479, 484.

There is a distinction between the cited clauses of the Fifth and Fourteenth Amendments of the Federal Constitution. The former is obligatory only on the United States—a restriction only on the Federal Government; the latter, only on the several States. *Hunter v. Pittsburg,* 207 U. S., 161, 52 Law Ed., 151; *Phillips v. Telegraph Co.,* 130 N. C., 513. So, the specific question is whether the act of 1927 conflicts with the provisions of the Fourteenth Amendment or with those of Article I, sec. 17, of the Constitution of North Carolina.

As a rule this objection can be urged only by a person whose legal right has been affected against the party or a representative of the party who commits or causes the injury. The plaintiff has no interest in any of the land alleged to be subject to condemnation; he has not suffered

and is not threatened with loss of property. When a plaintiff is permitted to sue for the benefit of another he must show an interest personal to himself. A party who is not personally injured by a statute is not permitted to assail its validity; if he is not injured he should not complain because another may be hurt. Tyler v. Judges, etc., 179 U. S., 405; 45 Law Ed., 252; McCabe v. Atchison, etc., Ry. Co., 235 U. S., 162, 59 Law Ed., 169, 174; Coble v. Comrs., 184 N. C., 342, 354. The issue which the appellant attempts to raise in this way is to be determined in such proceedings as may be instituted by the defendant against the owner for the condemnation of his property.

The assigned objection, even if the plaintiff could take advantage of it, is without merit because it does not rest on any strict legal rights. True, it is provided in section 27 that at any time after summons is issued a judge of the Superior Court, if of opinion that the defendant in a proceeding for condemnation is engaged, or is likely to be engaged in an act which will change the existing condition or character of the land sought to be condemned, may issue a restraining order without bond and that the State shall be under no obligation or liability for the payment of damages. No doubt the latter clause was inserted on the theory that the State cannot be sued without its consent; but section 27 further provides that the restraining order shall be issued upon such terms as may be just. The obvious purpose of this provision is to protect the owner of the land and to see that no injustice is done him. The means of protection is a matter for the judge to devise. It is subject to grave doubt whether damage is done in the sense of taking property by arresting the destruction of primitive forests until the defendant can decide whether it shall undertake to appropriate the land covered by such forests for the purposes contemplated by the statutes under consideration; but we were informed on the argument here that the defendant has stated of record that it will provide for the protection of the landowners such security as the judge may deem adequate—such as will be sufficient amply to indemnify against loss.

The defendant is an agency of the State. It is vested with the power of eminent domain, but is not subject to the limitations prescribed in Consolidated Statutes 1714 and 1715. Yet, in addition to issuing the summons the clerk must publish a notice setting forth the filing of the petition, the name of the petitioner and of every other person named in the petition, together with a brief description of the land, a statement of the relief demanded, and the return day of the summons. Section 19. Until the provisions of this section are complied with no final order or judgment shall be entered. When they are observed, and when the judge issues his restraining order upon such terms as may be just, thereby affording ample protection against loss, the landowner cannot

complain that he is denied the equal protection of the laws or that his property is taken without due process of law in violation of the Fourteenth Amendment or of Article I, sec. 17, of the Constitution of North Carolina. The Fourteenth Amendment does not undertake to control the power of a State to determine the process by which legal rights may be asserted or legal obligations enforced if the method of procedure gives reasonable notice and a fair opportunity to be heard before the issues are decided. *Ex parte Kemmler,* 136 U. S., 436, 34 Law Ed., 519; *Hallinger v. Davis,* 146 U. S., 320, 36 Law Ed., 986; *Allen v. Georgia,* 166 U. S., 141, 41 Law Ed., 949. In *Hurtado v. California,* 110 U. S., 516, 28 Law Ed., 232, it is said that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the public good, which regards and preserves the principles of liberty and justice, must be held to be due process of law; and in *Missouri Pac. R. Co. v. Humes,* 115 U. S., 520, 29 Law Ed., 463: "If the laws enacted by a State be within the legitimate sphere of legislative power, and their enforcement be attended with the observance of those general rules which our system of jurisprudence prescribes for the security of private rights, the harshness, injustice, and oppressive character of such laws will not invalidate them as affecting life, liberty or property without due process of law."

In reference to Article I, sec. 17, it is enough to say that the Legislature had the right to delegate to the defendant the power of eminent domain. "The right of the public to private property, to the extent that the use of it is needful and advantageous to the public must, we think, be universally acknowledged. Writers upon the laws of nature and nations treat it as a right inherent in society. There may, indeed, be abuses of the power, either in taking property without a just equivalent, or in taking it for a purpose really not needful or beneficial to the community; but when the use is in truth a public one, when it is of a nature calculated to promote the general welfare, or is necessary to the common convenience, and the public is, in fact, to have the enjoyment of the property or of an easement in it, it cannot be denied that the power to have things before appropriated to individuals again dedicated to the service of the State, is a power useful and necessary to every body politic." *R. R. v. Davis,* 19 N. C., 451. Machinery is provided for determining the measure of compensation to which the owner of the property taken may be entitled, and the purpose to which the property so taken is to be appropriated is, as hereafter pointed out, unquestionably a public purpose.

The appellant's second objection, as set out in his brief, is this: The act of 1927 is unconstitutional for the reason that it does not provide a

19—196

fund adequate to pay for such lands as the Park Commission proposes to condemn, and that in fact no provision has been made for the payment of damages. We give this abridged statement of the argument: The doctrine that private property cannot be taken for public use without just compensation implies that the owner shall receive the market value of his property; precedent to "just compensation" are an adequate fund and an appropriate remedy to enforce its application; payment need not precede the taking, but provision for compensation must be definite, leaving open to litigation nothing but the title and the quantum of damages; the fund provided ($2,000,000) is vastly inadequate to pay for the lands which are within the scope and contemplation of the act.

The argument is met by what we have said in regard to the appellant's want of personal interest in this phase of the controversy; but, without reference to this, there are other facts which we deem to be conclusive. Section 26 provides that no part of the funds to be derived from a sale of the bonds shall be expended until it shall have been made to appear to the Commission, and found as a fact by the Governor and Council of State, that adequate financial provision has been made to purchase that portion of the proposed area which lies within the State of North Carolina. It is alleged in paragraph four of the complaint that this finding of fact has been made. The allegation is equivalent to the admission of a legislative determination that an adequate fund has been secured. The bonds are not the only source from which the fund is to come. The Federal act declares that the Secretary of the Interior on behalf of the United States may accept title to lands to be purchased with money subscribed by the Great Smoky Mountains, Incorporated, (North Carolina), and with other contributions. 16 U. S. Code, Annotated, Cumulative A. P. P., 1927. In addition the Laura Spellman Rockefeller Memorial Fund has agreed to contribute an amount equal to the total contributions of North Carolina and Tennessee up to five million dollars. Under these circumstances we cannot hold as a conclusion of law that ample provision has not been made for awarding "just compensation" to those whose property may be appropriated to the public use. The defendant says that in any event the faith of the State is a sufficient guaranty of payment. *In re Manderson,* 51 Fed., 501; *Shoemaker v. U. S.,* 147 U. S., 282, 302, 37 Law Ed., 170; *U. S. v. Gettysburg E. Ry. Co.,* 160 U. S., 668, 40 Law Ed., 576.

It is next insisted that the act of 1927 is a private law, the enactment of which is prohibited by Article II, section 29, of the State Constitution; also that no notice was given that application would be made to the General Assembly for the passage of the act as required by Arti-

cle II, section 12. This position cannot be maintained. The act is public, not private. A public statute is a universal rule which regards the whole community as distinguished from one which operates only upon particular persons and private concerns. It is usually applicable to all parts of the State, but a statute will not be deemed private merely because it extends to particular localities or classes of persons. 25 R. C. L., 763; *S. v. Chambers,* 93 N. C., 600. Moreover, the inhibition in section 29 applies only to the classes of private acts therein specified and not to the purposes designated in the statutes which the appellant assails. If the act were within the purview of section 12 its ratification by the General Assembly would raise the conclusive presumption that the required notice had been given. *Cox v. Commissioners,* 146 N. C., 584; *Gatlin v. Tarboro,* 78 N. C., 119; *Brodnax v. Groom,* 64 N. C., 244.

The appellant's contention that the General Assembly cannot vest in the Federal Government the power of eminent domain is based upon an erroneous assumption. The act in question does not purport to confer such power. In section 18 the defendant, as an agency of the State, is given the power to acquire land and other property, not for itself, but in the name of and in behalf of the State of North Carolina. As an individual entity or a corporate body the defendant cannot acquire title to land by instituting a proceeding for condemnation. It is exclusively an agency of the State; it may acquire title only in the name of the State. Section 3. This provision is not impaired by the fact that the State is authorized to cede the acquired property to the Federal Government in consideration of the public benefit to be derived from the establishment of a National Park. There is no transfer of sovereignty from the State to the Federal Government. The State Constitution is not a grant, but a restriction of powers, no clause of which prohibits the power of condemnation as authorized by the recent act. The Great Smoky Mountains National Park cannot be "established, dedicated, and set apart as a public park for the benefit and enjoyment of the people" until title to the lands within the designated area is vested in the United States in fee simple. The method provided for the final vesting of the title is about the only one available to the State. The land covered by some of the National Parks, such as the Sequoia, Yosemite, Mesa Verde, Crater Lake, Wind Cave, Glacier and others, was reserved and withdrawn from settlement, occupancy, or sale under the laws of the United States; but land sought for the Great Smoky Mountains National Park is held by private owners. Under the doctrine of eminent domain the title may be acquired on behalf of the State and then by legislative and congressional assent it may be transferred to the United States.

Nor can we concur in the assertion that the purpose for which the bonds are to be issued is not a public purpose, conceding for the moment that the plaintiff as a resident taxpayer may present the question for decision. *Stratford v. Greensboro,* 124 N. C., 127, 133. It is not easy to frame a definition of the term "public use" which would be of universal application, but it is settled by our decisions that whether a use is public is for the ultimate decision of the courts and that if a particular use is public the expediency or necessity for establishing it is exclusively for the Legislature. *Cozard v. Hardwood Co.,* 139 N. C., 283; *Jeffress v. Greenville,* 154 N. C., 491; *Rindge Co. v. Los Angeles Co.,* 262 U. S., 700, 67 Law Ed., 1186. In his work on Eminent Domain Lewis says: "Public use means the same as use by the public, and this it seems to us is the construction the words should receive in the constitutional provision in question. The reasons which incline us to this view are: First, that it accords with the primary and more commonly understood meaning of the words; second, it accords with the general practice in regard to taking private property for public use in vogue when the phrase was first brought into use in the earlier constitutions; third, it is the only view which gives the words any force as a limitation or renders them capable of any definite and practical application."

One class of cases defining a public use includes those in which the United States, a State, or a municipal corporation seeks to acquire land on which to carry on its proper public functions or to perform some act directly enhancing the security or health of the community. Nichols, The Power of Eminent Domain, section 211. In accordance with these principles the power of eminent domain has been exercised by taking private property for highways, railways, streets, playgrounds, memorial halls, monuments, statues, public buildings and many other similar purposes. Those which are primarily aesthetic are not excluded. The old doctrine that land could be taken only when needed by the public for necessary purposes is now little more than a theory or a canon of construction. In *Shoemaker v. United States,* 147 U. S., 282, 297, 37 Law Ed., 170, 184, it is said that a proposition to take private property, without the consent of the owner, for a public park would formerly have been regarded as a novel exercise of legislative power, but now the validity of legislative acts erecting such parks and providing for their cost is uniformly upheld. "The park principle has been gradually extended far beyond the original notion of breathing spaces in congested parts of populous cities. It has already been pointed out that pleasure drives may be laid out. Land may be taken by a city for a park outside the city limits. Vast tracts of uninhabited woodland, or spots made beautiful by nature, may be taken for State or National parks, and the

whole site of a famous battle may be reserved. It is apparent that pleasure and sentiment must be the principal factors in justifying such takings." Nichols, The Power of Eminent Domain, section 233.

These principles are supported in *Cozard v. Hardwood Co., supra; Hudson v. Greensboro,* 185 N. C., 502; *Hinton v. State Treasurer,* 193 N. C., 496; *Lancey v. King Co.,* 34 L. R. A., 817; *Pontiac Imp. Co. v. Cleveland Park District,* 23 A. L. R., 866; *United States v. Gettysburg Electric Ry. Co.,* 60 U. S., 668, 40 Law Ed., 576; *Clark v. Nash,* 198 U. S., 361, 49 Law Ed., 1085; *Rindge Co. v. Los Angeles Co., supra.*

As the use contemplated by the act of 1927 is a public use, the extent to which property shall be taken for such use rests in the discretion of the Legislature, subject to the restraint that just compensation shall be made. *Shoemaker v. U. S., supra; U. S. v. Gettysburg Electric Ry. Co., supra.*

The appellant finally contends that the act of 1927 is in conflict with the following clause in Article V, section 4, of the Constitution of North Carolina: "The General Assembly shall have no power to give or lend the credit of the State in aid of any person, association, or corporation except to aid in the completion of such railroads as may be unfinished at the time of the adoption of the Constitution, or in which the State has a direct pecuniary interest, unless the subject be submitted to a direct vote of the people of the State and approved by a majority of those who shall vote thereon."

This section has been construed as an inhibition on giving or lending the credit of the State to third persons, individual or corporate, and of the kind contemplated in the provision. *Lacy v. Bank,* 183 N. C., 373, 379. The statutes referred to do not purport in terms or in spirit to give or lend the credit of the State in aid of "any person, association, or corporation" embraced in the inhibition. The Park Commission is neither such a municipal nor such a private corporation as is described in the seventh and eighth articles of the Constitution. It is obvious, then, that the State is acting on its own behalf through an agency ordained by the legislative department of the State Government; and herein lies the distinction between the act under which the North Carolina Park Commission was established (Laws 1927, ch. 48) and the act authorizing the World War Veterans Loan (Laws 1925, ch. 155), under which the question of contracting a bonded indebtedness was submitted to the voters of the State. The judgment sustaining the demurrer is

Affirmed.