OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law*, Eminent domain.  *Public Park.*

It would be constitutionally competent for the General Court to authorize the city of Salem to take by eminent domain the land known as "Derby Wharf," for use as a memorial to its sailors and as a marine park for the benefit of the public and as a national historic monument; to raise money by taxation to pay the cost thereof, and afterwards to convey the land gratuitously to the United States for maintenance for the same uses.

On April 14, 1937, the Senate adopted the following order:

WHEREAS, There is pending before the Senate a bill entitled "An Act authorizing the City of Salem to acquire Certain Land for a Memorial to the Sailors of Salem", printed as House document numbered one thousand six hundred and forty-five, a copy whereof is hereto annexed; and

WHEREAS, Doubt exists whether or not the acquisition of the real estate, referred to in said bill, by the city of Salem, with funds raised by taxation, for the purpose of transfer to the United States without monetary consideration, said property to be thereafter maintained by the United States as a national historic monument in the

form of a park, is a public and municipal purpose or use for which taxes may be levied, public funds appropriated, and the power of eminent domain exercised, all as provided for or contemplated by said bill, and whether or not said bill, if enacted into law, would violate the provisions of Article IV of Section I of Chapter I of Part the Second of the Constitution of the Commonwealth, or any other provision of said Constitution, or any provision of the Constitution of the United States; therefore be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the Senate on the following important questions of law: —

1. Would the taking by eminent domain under section one of said bill, if enacted into law, of the property referred to therein, for the purpose contemplated by section three of said bill, be a taking of private property for a public use?

2. Would the expenditure of public money raised by taxation, as contemplated by said bill, be an expenditure of public money for a public purpose?

3. Would the establishment of a national historic monument, substantially as set forth in section three of said bill, constitute a purpose for which the commonwealth may legislate under the power given by said Article IV of Section I of Chapter I of Part the Second of the Constitution of the Commonwealth, or any other power given to the General Court by said Constitution?

4. Is it constitutionally competent for the Commonwealth to authorize the city of Salem to expend money for a national historic monument, substantially as provided in the accompanying bill?

5. Would the accompanying bill, if enacted into law, violate any provision of the Constitution of the United States or the Constitution of the Commonwealth?

The proposed statute to which the order and the Opinion relate is as follows:

SECTION 1. The city of Salem is hereby authorized to take by eminent domain under chapter seventy-nine of the General Laws, or acquire by purchase or otherwise, the land in said city known as Derby Wharf, and certain other land in the neighborhood of said Derby Wharf, all located in said city, as indicated on the plat accepted by the national park service of the United States department of the interior and by the mayor of said city, for the purpose of constituting a memorial to the sailors of Salem.

SECTION 2. Said city is further authorized to borrow for said purpose from time to time within a period of five years from the passage of this act sums not exceeding, in the aggregate, ninety-five thousand dollars, and may issue bonds or notes therefor, which shall bear on their face the words, Derby Wharf Memorial Loan, Act of 1937. Each authorized issue shall constitute a separate loan, and such loans shall be paid in not more than five years from their dates. Indebtedness incurred under this act shall be in excess of the statutory limit and shall, except as herein provided, be subject to chapter forty-four of the General Laws, exclusive of the limitation contained in the first paragraph of section seven thereof.

SECTION 3. Said city is further authorized to convey said land to the United States of America without monetary consideration, to be laid out or restored and preserved by said United States as a national historic monument under authority of an act of Congress known as Public-Number two hundred and ninety-two, Seventy-Fourth Congress, approved August twenty-first, nineteen hundred and thirty-five; said historic monument to be a marine park which will be educational and recreational and conducted for the benefit of the public.

SECTION 4. Chapter three hundred and sixty-five of the acts of nineteen hundred and thirty-six is hereby amended by striking out in the third line the words "and restoration".

SECTION 5. This act shall take effect upon its passage.

The order was transmitted to the Justices on April 16, 1937, and on April 29, 1937, they returned the following answer:

To The Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions in an order received on the sixteenth day of April, 1937, a copy whereof is hereto annexed. These questions relate to a proposed statute authorizing the city of Salem to take by eminent domain, or acquire by purchase or otherwise, "the land in said city known as Derby Wharf" and other land in its neighborhood, all located within said city, for the purpose of constituting a memorial to the sailors of Salem. No description of "Derby Wharf" or of its special connection with sailors has been transmitted to us. We have no particular knowledge touching that matter beyond general information as to the preëminence of Salem for many years as a center of extensive commerce on the high seas with distant ports in many parts of the world. Reference is made in the body of the proposed statute to the land to be taken as a "memorial to the sailors of Salem," as "a national historic monument," and as an "historic monument to be a marine park which will be educational and recreational and conducted for the benefit of the public." These constitute the avowed uses of the land to be taken. For the purpose of acquiring this land, the city is empowered to borrow a sum not exceeding ninety-five thousand dollars on conditions stated. By § 3 of the proposed statute, "Said city is further authorized to convey said land to the United States of America without monetary consideration, to be laid out or restored and preserved by said United States as a national historic monument under authority of an act of Congress . . ." therein designated.

The important question is whether the General Court may authorize a single city to take by eminent domain land for the uses set forth in the proposed statute and to pay for the same out of moneys to be raised by taxation,

with the design of conveying it without monetary consideration to the United States of America for the purposes described in the act of Congress to which reference has been made. The relevant provisions of the Constitution of this Commonwealth are these: Art. ·10 of the Declaration of Rights: ". . . no part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people . . . And whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor"; art. 51 of the Amendments: "The preservation and maintenance of ancient landmarks and other property of historical or antiquarian interest is a public use, and the commonwealth and the cities and towns therein may, upon payment of just compensation, take such property or any interest therein under such regulations as the general court may prescribe"; art. 62 of the Amendments, § 1: "The credit of the commonwealth shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned and managed."

It is fundamental under our system of government that land can be taken by eminent domain only for a public purpose. Money raised by taxation can be expended only for a public purpose. A public use commonly is one the enjoyment and advantage of which are open to the public on equal terms. The circumstances may be such that only a relatively small portion of the inhabitants may participate in the benefits, but the use or service must be of such nature that in essence it affects them as a community and not merely as individuals. *Opinion of the Justices*, 237 Mass. 598, 609. Land cannot be taken by eminent domain with the intent to transfer it to private individuals for their own use. *Salisbury Land & Improvement Co.* v. *Commonwealth*, 215 Mass. 371, 376, 377. *Opinion of the Justices*, 204 Mass. 607.

The purposes for the acquisition of the land set forth in the proposed statute are public. Manifestly, use of the

land to be taken as a public park is within the scope of the statute. It is not open to debate that use of the land for a public park is a public purpose for which land may be taken by eminent domain and paid for out of moneys raised by taxation. *Holt* v. *Somerville*, 127 Mass. 408, 413. *Higginson* v. *Treasurer & School House Commissioners of Boston*, 212 Mass. 583. *Lynnfield* v. *Peabody*, 219 Mass. 322, 340. *Wright* v. *Walcott*, 238 Mass. 432. *Rindge Co.* v. *Los Angeles*, 262 U. S. 700, 707, 708. *Shoemaker* v. *United States*, 147 U. S. 282, 297.

The land authorized to be taken in the proposed statute is also described as an "historic monument." The word "monument" in its common use means ordinarily a shaft, statue, or memorial of stone, bronze, or other appropriate material. It has a more comprehensive sense as comprising a structure or a place designed to commemorate an important event, to honor distinguished service, or to perpetuate the memory of a notable individual or a highly useful class in the community. *Rhode Island Hospital Trust Co.* v. *Benedict*, 41 R. I. 143, 145, 146, 147. In its broad signification a monument may denote land or structures dedicated to public historical, patriotic, educational, and recreational purposes. A monument to a great spiritual leader is a public charity. *Eliot* v. *Trinity Church*, 232 Mass. 517, 521. A monument may commemorate aspirations and principles, or even the foundations of community prosperity or preëminence. Another purpose of the taking is declared in § 3 of the proposed statute to be "educational" and "for the benefit of the public." The purposes of taking the property, as stated in the proposed statute, in our opinion constitute a public use in a constitutional sense. *Attorney General* v. *Williams*, 174 Mass. 476, 479. *Higginson* v. *Nahant*, 11 Allen, 530. *Prince* v. *Crocker*, 166 Mass. 347, 361. *Kingman* v. *Brockton*, 153 Mass. 255, 256. *Opinion of the Justices*, 237 Mass. 598.

The General Court has a wide discretion in the distribution of public burdens among the several cities and towns. It may authorize cities or towns to acquire by the exercise of eminent domain land within their own bounda-

ries for a recognized public purpose, even though the title must ultimately be transferred to some other public agency. *Merrymount Co.* v. *Metropolitan District Commission*, 272 Mass. 457, 464. So, also, the expense of the construction of armories may be imposed upon the municipalities where erected, *Hodgdon* v. *Haverhill*, 193 Mass. 406, even though the use is in the main for the people at large. *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50, 51.

The question remains whether the provisions of § 3 of the proposed statute are valid, authorizing the city of Salem to convey the land taken to the United States without monetary consideration to be laid out or restored and preserved by the United States as a national historic monument under authority of a specified act of Congress. This is a new question in this Commonwealth.

The act of Congress to which reference is made in § 3 of the proposed statute is entitled "An Act to provide for the preservation of historic American sites, buildings, objects, and antiquities of national significance, and for other purposes." Section 1 of that act declares that "it is a national policy to preserve for public use historic sites, buildings and objects of national significance for the inspiration and benefit of the people of the United States." Other sections provide that the Secretary of the Interior through the "National Park Service" shall have specified powers and perform enumerated duties and functions. Among others, he may acquire, in the name of the United States by gift, title to real estate of value as commemorating and illustrating the history of the United States and cognate matters, and may "Restore, reconstruct, rehabilitate, preserve, and maintain historic or prehistoric sites, buildings, objects, and properties of national historical or archaeological significance," and may "Operate and manage historic and archaeologic sites, buildings, and properties acquired under the provisions of this Act together with lands and subordinate buildings for the benefit of the public, such authority to include the power to charge reasonable visitation fees and grant concessions, leases, or permits for the use of land, building space, roads, or trails when necessary or desirable

either to accommodate the public or to facilitate administration . . ." Such Secretary is authorized to coöperate with and may accept the assistance of any State or municipal department or agency. When said Secretary determines that it will be administratively burdensome to manage any particular historical building, site, or property so donated, "he may cause the same to be done by organizing a corporation for that purpose under the laws of the District of Columbia or any State." Nothing in that "Act shall be held to deprive any State, or political subdivision thereof, of its civil and criminal jurisdiction in and over lands acquired by the United States under this Act." That act contains numerous ancillary provisions.

The line of separation between the United States of America and the several States as to jurisdiction and sovereignty is clear in its constitutional aspects. Though sometimes difficult to define, it is sharply maintained. *A. L. A. Schechter Poultry Corp.* v. *United States*, 295 U. S. 495, 549, 550, 554. The United States is not a foreign nation with respect to the several States. The people of the Commonwealth owe allegiance both to the State government and to the national government. Each of the two governments is supreme within its appropriate sphere. They are designed to be adapted to each other and to work harmoniously together. Cities and towns were authorized to pay bounties during the Civil War to soldiers serving in the armies of the United States. *Lowell* v. *Oliver*, 8 Allen, 247. *Freeland* v. *Hastings*, 10 Allen, 570. The Commonwealth has conveyed lighthouses without compensation to the United States. *Newcomb* v. *Rockport*, 183 Mass. 74. Testamentary gifts to the United States are valid. *Dickson* v. *United States*, 125 Mass. 311. The power to pay gratuities to individuals is denied to the General Court by the Constitution. *Lowell* v. *Boston*, 111 Mass. 454. *Opinion of the Justices*, 175 Mass. 599, 600. A gift to the United States for a public use stands on a different footing. It is a gift not to an individual but to the general government, which owes important duties to the several States and to their citizens. The General Court may authorize the United

States to take land within the Commonwealth for post
offices, forts, navy yards and other necessary purposes.
*Burt* v. *Merchants' Ins. Co.* 106 Mass. 356.  *Branch* v.
*Lewerenz,* 75 Conn. 319, 323.  *Reddall* v. *Bryan,* 14 Md.
444, 477, 478.  *Orr* v. *Quimby,* 54 N. H. 590.  *Gilmer* v.
*Lime Point,* 18 Cal. 229.  There are authorities to the con-
trary in other jurisdictions.  *Kohl* v. *United States,* 91 U. S.
367, 373.  *Darlington* v. *United States,* 82 Penn. St. 382,
387.  *Trombley* v. *Humphrey,* 23 Mich. 471, 475, 476.  In
appropriate cases the power to take land by eminent do-
main may be given to a foreign corporation.  When the use
for which land is taken is public, as for a railroad, the use
is none the less public because the owner is incorporated
outside the Commonwealth.  *Abbott* v. *New York & New
England Railroad,* 145 Mass. 450, 453.  The right of emi-
nent domain exists in the Federal government and may be
exercised within the several States so far as necessary to
the enjoyment of the powers conferred upon it by the Con-
stitution.  *Kohl* v. *United States,* 91 U. S. 367, 372.  *United
States* v. *Gettysburg Electric Railway,* 160 U. S. 668, 678.  It
is not necessary to inquire whether the United States could
exercise the power of eminent domain to take the land
described in the proposed statute.  The taking is proposed
to be made by the city of Salem.  The land is to be taken
for a memorial park to the sailors of Salem to be trans-
ferred for such purpose to the United States.  That taking
is for a public purpose as recognized by *Shoemaker* v.
*United States,* 147 U. S. 282, and *Rindge Co.* v. *Los Angeles,*
262 U. S. 700.  The act of Congress authorizes the United
States to accept a gift of this nature.  There seems to be
no limitation upon its power to accept conveyance of the
land from the city of Salem after the latter has acquired
title to the land.  Transfer of title to the land to the United
States after its taking by the city of Salem would not affect
the main public uses for which it was taken.  The convey-
ance to the United States by the city of Salem must be
made for the purposes described in the proposed statute.
We think that the act of Congress authorizes the accept-
ance of a conveyance of that nature.  Conveyance of the

land, after being taken by the city of Salem for the purposes enumerated in the proposed statute, to the United States, to be administered in compliance with the act of Congress, would not render the park any the less public in its nature than it would be if the title were retained by the city. The proposed ultimate ownership would not make the taking in the first instance any less a taking for a public use. After such conveyance, the land will remain in the same place and will be available for the benefit of the public of Salem in company with the general public as if there were no conveyance. The management and operation, however, must be in accordance with the specified act of Congress. Local control will no longer exist. There are numerous decisions upholding the constitutionality of statutes similar to the one here proposed. We are not aware of any decisions to the contrary. *Yarborough* v. *North Carolina Park Commission*, 196 N. C. 284. *State* v. *Oliver*, 162 Tenn. 100. *Rudacille* v. *State Commission on Conservation & Development*, 155 Va. 808. *Via* v. *State Commission on Conservation & Development*, 9 Fed. Sup. 556. *Suncrest Lumber Co.* v. *North Carolina Park Commission*, 30 Fed. (2d) 121. *Lancey* v. *King County*, 15 Wash. 9. *Matter of United States*, 96 N. Y. 227. See, also, *Branch* v. *Lewerenz*, 75 Conn. 319, 323.

The conclusion is that our answer is "yes" to questions 1, 2, 3 and 4. So far as question 5 has not already been answered, it presents no specific point but is general in nature and hence need not be answered. *Opinion of the Justices*, 145 Mass. 587, 592; 261 Mass. 556, 613.

ARTHUR P. RUGG.
JOHN C. CROSBY.
EDWARD P. PIERCE.
FRED T. FIELD.
CHARLES H. DONAHUE.
HENRY T. LUMMUS.
STANLEY E. QUA.