# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## FRANK HANNAH AND J. R. NICHOLS V. CITY OF ROANOKE.

September 22, 1927.

1. EMINENT DOMAIN—*Damages to Property not Actually Taken—Right of City to have such Damages Ascertained by Condemnation Proceedings.*— When the eminent domain statute, found in chapter 176 of the Code of 1919, is read as a whole and given a reasonable construction, it is evident that the legislature intended to, and has, provided for the ascertainment of damages in condemnation proceedings instituted by corporations and cities where no part of the property is actually taken, but only damaged. Therefore a municipality has the right to have ascertained by condemnation proceedings consequential damages to the property of abutting owners, by reason of the change in grade of a street, no part of said property, nor interest or estate therein, being sought to be taken.

2. EMINENT DOMAIN—*Damages to Property not Actually Taken—Right of City or Corporation to have Damages Ascertained by Condemnation Proceedings.*—Notwithstanding that in revising chapter 176 of the Code of 1919, on eminent domain, the revisors omitted the following language found in section 4 of the act of 1906, page 452: "Or entitled to damages to property by reason of the doing of such work or the making of such improvements where no property is taken," and also omitted from subsection 25, as amended by the act of 1906, page 452, the words: "Or upon the damages to private property by reason of the doing of such work or making such improvements or to have such damages ascertained," the revisors left in the eminent domain statute many provisions of the Acts of 1906, page 452 (such as sections 4364, 4366, 4367, 4368 and 4383, Code of 1919), which show that they never intended to so word the statute that a city or corporation could not proceed thereunder in cases where no property is actually taken but the property is only damaged.

3. EMINENT DOMAIN—*Damages to Property not Actually Taken—Right of City to have such Damages Ascertained by Condemnation Proceedings— Effect of Section 3036 of the Code of 1919.*—Section 3036 of the Code of 1919 merely provides a cumulative remedy in certain cases, and was not intended to modify or repeal the general condemnation

statutes of the State under which a city has the right to institute eminent domain proceedings to ascertain damages to property not taken.   It is within the province of the legislature to provide two remedies in such cases.

4.   EMINENT DOMAIN—*Damages to Property not Actually Taken—Right of City to have such Damages Ascertained in One Proceeding Against all Property Owners.*—A municipality having the power of eminent domain has the right to unite in one proceeding the different land-owners along the line of an improvement and have one set of commissioners appointed to ascertain the damages in all cases to the property taken or damaged.   Section 4375 of the Code of 1919 applies only to counties, and in no manner affects the right of a city to join the different landowners along the line of improvement in one proceeding.

5.   EMINENT DOMAIN—*Damages to Property Taken or Damaged—Right to have such Damages Ascertained in One Proceeding Against all Landowners.*—Where it is sought to condemn several tracts of land belonging to different owners, all the owners may be joined in one proceeding, in the absence of any statutory provision to the contrary. In Virginia there is no statute requiring a separate proceeding as to each landowner.   On the contrary, section 4364 of the Code of 1919 indicates a joinder of parties.   The condemning party, however, need not join all the owners.

6.   EMINENT DOMAIN—*Damages to Property Taken or Damaged—Right to have such Damages Ascertained in One Proceeding Against all Landowners—Separate Assessment for Each Tract.*—Where several tracts of land, belonging to different owners separately, are embraced in one proceeding, a separate assessment should be made for each tract, although ordinarily the same jury may make the asssessments.

7.   EMINENT DOMAIN—*Misconduct of Commissioners—Receiving Evidence in the Absence of the Complaining Party.*—It is improper for commissioners to receive evidence upon the merits of the case in the absence of the complaining party, and where the party has been prejudiced by such conduct the findings of the commissioners will be set aside.

8.   EMINENT DOMAIN—*Misconduct of Commissioners—Receiving Evidence in the Absence of the Complaining Party—Case at Bar.*—In the instant case the action of a commissioner in eminent domain proceedings in talking with several real estate men before and after the award was made about the value of the lots in question, was alleged as error. It appeared that the opinions of the real estate men made little, if any, impression upon this commissioner and that he never mentioned the matter to his cocommissioners; that in agreeing to the award the commissioners took into consideration all the evidence introduced before them and the view of the property by the commissioners.

*Held:* That, under the circumstances of the case, it could not be said that the parties were prejudiced by the conduct of the commissioner in question.

9. EMINENT DOMAIN—*Award of Commissioners—Inadequate Damages—Setting Aside.*—The court cannot set aside the award of the commissioners simply because the damages seem to be inadequate. To warrant such action the inadequacy must be so great as to evince a misconception of the principles governing the case, prejudice, or corruption, on the part of the commissioners.

10. EMINENT DOMAIN—*Award of Commissioners—Inadequate Damages—Setting Aside—Case at Bar.*—In the instant case, a proceeding by a city to ascertain the damages resulting to landowners from a street improvement, the evidence on the amount of damages resulting to the lots of the landowners from the improvement was very conflicting. The commissioners were prominent citizens whose honesty and integrity were not questioned. They heard the evidence of all the witnesses, viewed the premises and awarded such sums as they believed would justly compensate the condemnees for the damage done to their respective properties by the construction of the proposed improvement.

*Held:* That although the members of the Supreme Court of Appeals, if on the commission, might have reached a different conclusion, there was no reversible error in the awards made by the commissioners.

Error to a judgment of the Court of Law and Chancery of the city of Roanoke, in eminent domain proceedings. From a judgment overruling defendants' demurrers to the petition and exceptions to the report of the commissioners, defendants appeal.

*Affirmed.*

The opinion states the case.

*Horace M. Fox,* for the plaintiffs in error.

*R. C. Jackson* and *Funkhouser & Apperson,* for the defendant in error.

WEST, J., delivered the opinion of the court.

The city of Roanoke proposes to erect an overhead

bridge the full width of and over Walnut avenue, beginning at grade at its intersection with Jefferson street and extending across the tracks of the Virginian Railway and the Norfolk and Western Railway to a point on the east side of Roanoke river. This proceeding, by petition, was instituted by the city under the eminent domain act, chapter 176 of the Code of Virginia, to have the damages for the property taken and to the property no part of which was taken ascertained by commissioners appointed by the court.

The defendants, Frank Hannah and J. R. Nichols, filed their separate demurrers to the petition. All owners of lots abutting on Walnut avenue, between the limits above indicated, were made parties defendant to the proceeding, and, with the exception of Frank Hannah and J. R. Nichols, the plaintiffs in error, each accepted the award of the Commissioners. No part of the land of Frank Hannah or J. R. Nichols was taken, and the commissioners awarded Hannah $3,-500.00 and Nichols $1,730.00 damages, to which action of the commissioners they excepted.

The court overruled the demurrers to the petition and the exceptions to the commissioners' report, and entered a judgment confirming the same, to which this writ of error was allowed.

Plaintiffs in error make three assignments of error:

1. The action of the court in holding that a municipality has the right to have ascertained "by condemnation proceedings, consequential damages to the property of abutting owners, by reason of the change in grade of street, no part of said property, nor interest or estate therein, being sought to be taken."

2. The action of the court in holding that a municipality having the power of eminent domain has a right to unite in one proceeding the different landowners

along the line of improvement and have one set of commissioners appointed to ascertain the damages in all the cases.

3. The failure of the court to sustain the exceptions to the report of the commissioners, "because the damages are grossly inadequate and because of misconduct of the commissioners."

[1, 2] (a) The first assignment of error involves the consideration of the constitutional and statutory provisions relating to the condemnation of private property for public use.

Prior to the Constitution of 1902, the Constitution of Virginia (Const. 1870, article 5, section 14) protected its citizens against *taking* property for public use without just compensation; but the condemnor was not liable to the owner of an adjacent lot, whose land was not actually *taken*, for consequential damages to his premises, unless made liable by statutory enactment. The constitutional provision reads as follows:

"The General Assembly shall not pass any law whereby private property shall be *taken* for public use without just compensation."

The Constitution of 1902 provides that the General Assembly "shall not enact any law whereby private property shall be taken or damaged for public uses without just compensation." Section 58, Article IV.

When the legislature undertook to give effect to the provision of the new Constitution just quoted, it passed the act found in section 1105-f of Pollard's Code, 1904, which provides, in subsections 4 and 5 of that section, that any company chartered by this State, authorized by its charter or the laws of this State to condemn land or other property or any interest or estate therein for its uses, may, upon complying with requirements of the preceding section, and after ten days notice, apply to the

proper court for the appointment of commissioners to "ascertain what will be a just compensation for the land or other property, or for the interest or estate therein, proposed to be condemned for its uses, and to *award damages*, if any, *resulting* to the adjacent or other property of the owner, or *to the property of any other person*, beyond the peculiar benefits that will accrue to such properties, respectively, from the construction and operation of the company's works." (Italics ours.)

By subsection 8, the commissioners are required to ascertain what will be a just compensation for the land proposed to be taken and to assess and report the damages, if any, to the "adjacent or other property of such tenant or owner and to the *property of other persons* who will be damaged in their property by reason of the construction and operation of. the works of said company, beyond the peculiar benefits that will accrue to such properties, respectively."   (Italics ours.)

Before any amendment had been made to section 1105-f, *supra*, this court was called upon to construe the same in *Tidewater R. R. Co.* v. *Shartzer*, 107 Va. 562, 59 S. E. 407, 17 L. R. A. (N. S.) 1053.   No part of Mrs. Shartzer's land was sought to be taken, but she claimed damages to her property by reason of annoyance by smoke, dust, etc.   The commissioners awarded damages to her, and this court confirmed their action.   In the course of its opinion, the court said: "And coming on to the consideration of the statute, it cannot be doubted that by the change of the law in the Constitution and the statute, it was plainly intended to enlarge the right to compensation. Considering the terms of the Constitution and of the statute as they stood prior to 1902, and recognizing that the changes then introduced were designed to en-

large the right to compensation and extend it to cases where, under the old law, compensation was denied, it would seem that the language employed in the existing Constitution and Code are not difficult of interpretation, and should be held to embrace and give a remedy for every 'physical injury to property, whether by noise, smoke, gases, vibrations or otherwise.' "

Subsection 25 of the act of 1904 contained the provision found in the present statute, authorizing cities and towns to acquire land and other property under the provisions of the act, and requiring that the proceedings in such cases shall be according to the provisions of the act, as far as they can be applied to the same.

The legislature of 1906 (Laws 1906, chapter 257), in an effort to carry into effect the provision of the new Constitution allowing compensation for damages to property where no part of the property is taken, amended several subsections of the act of 1904.

To subsection 4 the following language was added: *"Or entitled to damages to property by reason of the doing of such work, or the making of such improvement, where no property is taken,* shall, before making application for the appointment of commissioners," etc.

The amendment added the following underlined words to subsection 25: *"Or upon the damages to private property by reason of the doing of such work or the making of such improvement,* it may acquire property by condemnation under the provisions of this act, *or have the damages ascertained,* and the proceedings in all such cases shall be according to the provisions of this act so far as they can be applied to the same."

The revisors of the Code, in revising chapter 176 of the Code of 1919, on eminent domain, omitted the following language found in section 4 of the act of 1906:

"Or entitled to damages to property by reason of the doing of such work or the making of such improvements where no property is taken." They also omitted from subsection 25, as amended by the act of 1906: "Or upon the damages to private property by reason of the doing of such work or making such improvements or to have such damages ascertained."

It is contended by plaintiffs in error, that in omitting the language quoted above, the revisors intended to prevent a city from condemning property under the eminent domain act for its uses where no part of the property is taken but where the property is only damaged. With this contention we cannot concur.

The revisors left in the eminent domain statute many portions of the act of 1906 which show that they never intended to so word the statute that a city or corporation could not proceed thereunder in cases where no property is actually taken but the property is only damaged.

In section 4364 of the Code it is provided that there shall be filed with the petition, "a plat of survey and a description of the land, or interest or estate which is sought to be condemned, or is likely to be damaged," etc. This section further provides that the petition "shall set forth the interest or estate intended to be taken in the land * * * or other damages to any person likely to arise by reason of the doing of such work, or the making of such improvement, or where no property will be taken for such uses and purposes but property will be damaged, and the necessity for the work of improvement which will cause or likely cause damages to the property or estate of any person."

Section 4366 of the Code provides, when notice has been given as required by statute, that "land or other property or interest or estate therein sought to be

condemned is wanted for the uses and purposes of such company, or that property will be damaged, or is likely to be damaged, by the doing of such work * * * though no property or interest be actually taken," the court shall appoint commissioners.

Under the provisions of section 4367 of the Code, the commissioners are required to make oath that they will faithfully and impartially "award damages, if any, resulting to the adjacent and other property of the tenant or owner, and to the property of any other person * * *."

Section 4368 of the Code requires the commissioners to report "the amount of damages to the adjacent or other property of said tenant or owner and to the property of other persons who will be damaged in their property by reason of the construction and operation of the works of said company."

Section 4383 of the Code gives to any person who claims that he will be damaged in his property by reason of the location, construction, straightening of the line or change of location * * * the right to appear before the commissioners appointed and have his "damages, if any, ascertained, allowed and paid * *."

When the eminent domain statute, found in chapter 176 of the Code of 1919, is read as a whole and given a reasonable construction, it is evident that the legislature intended to, and has, provided for the "ascertainment of damages in condemnation proceedings instituted by corporations and cities where no part of the property is actually taken, but only damaged."

Besides, this court has decided in the *Shartzer Case, supra,* that under the act of 1904 (before the 1906 amendments were passed), and under the provision of the new Constitution, a condemnation proceeding could

be maintained to assess the damage done to the property of another by the improvements where no part of such property was taken for the uses of the condemnor.

It is also contended that the enactment of the act of 1908 (chapter 217), now section 3036 of the Code of 1919, tends to show that condemnation proceedings cannot be maintained by a city under the general eminent domain statute, where no part of the property is taken, but property is damaged only.

Section 3036 provides that, "whenever the council of any city or town shall deem it desirable to grade any street, alley, or other public place, belonging to the city or town   *   *   they shall, as the case may be, by resolution or ordinance direct the same to be done, and if the improvement be such as may cause damage to the abutting owners, the resolution or ordinance shall designate and direct some committee of the council or some officer of the city or town   *   *   *   to proceed by personal inspection of all of the premises likely to be affected by such grading to ascertain what damages, if any, will accrue to the owners of the several properties to be affected."

[3] This act simply gives a cumulative remedy in certain cases, and was intended in no way to modify or repeal the general condemnation statutes of the State. It is in the province of the legislature to provide two remedies in such cases. *Ewing* v. *Board of Supervisors,* 131 Va. 472, 109 S. E. 474.

We find no merit in this assignment.

[4] (b) The second assignment of error is based upon the contention that there must be a separate proceeding against each landowner along the line of improvement, whose property is to be taken, or will be damaged thereby; and that one set of commissioners cannot

ascertain the damages in all the cases, except where the property is in a *county* and the proceeding is in the *circuit* court of a *county.*

To sustain this position plaintiffs in error rely upon section 4375 of the Code. This section applies only to counties, and in no manner affects the right of the city to join the different landowners along the line of improvement in one proceeding and ask for one set of commissioners to ascertain the damages in all the cases.

[5] In 20 C. J. 921, the law is stated thus: "Where it is sought to condemn several tracts of land belonging to different owners, all the owners may be joined in one proceeding, in the absence of any statutory provision to the contrary. Such a course is convenient and can injure no one if damages are separately assessed to each other. But the condemning party need not join all the owners."

There is no statute requiring a separate proceeding· as to each landowner. On the contrary, section 4364 indicates a joinder of parties by requiring a "memorandum" to be filed "showing the names and residences of the owners of such land, or other property."

Sections 4365 and 4366 contemplate the appointment of commissioners in each separate case; but the condemnor having united all the defendants in one proceeding, there is no reason why the same commissioners could not be appointed in all the cases.

[6] "Where several tracts of land, belonging to different owners separately, are embraced in one proceeding, a separate assessment should be made for each tract, although ordinarily the same jury may make the assessments." 20 C. J. 997–8.

This assignment is likewise without merit.

(c) The third and last assignment involves the amount of the damages awarded. It is contended that

the commissioners were guilty of misconduct, and that the damages are grossly inadequate.

It appears from, and in the language of, the petition, without contradiction, that the property of Frank Hannah, which will be damaged by the erection of the proposed bridge and approaches, consists of a triangular lot situate at the southeast corner of Jefferson and Walnut streets, fronting 59.70 feet on Jefferson street and 120.87 feet on Walnut avenue. This lot has upon it a two-story store building, fronting the entire lot on Jefferson street and running back on Walnut avenue sixty feet. There are two storerooms in the building, one opening on Jefferson street, with a door at the corner of Jefferson and Walnut, and another door on Jefferson street, and the other storeroom having an entrance only on Walnut avenue. On the rear of the Hannah lot, the remaining sixty feet on Walnut avenue, there is a double garage and small store.

The J. R. Nichols property fronts sixty-six feet on Walnut avenue, sixteen feet on the alley east of Jefferson street. The original Nichols lot extended through from Walnut to Jefferson street, and on the Jefferson street frontage there have been erected buildings fronting on Jefferson street, leaving approximately one-half of the lot fronting on Walnut avenue, and at present unimproved except by several rental garages located thereon. The fill and bridge proposed to be erected starts at grade at the intersection of Jefferson and Walnut and rises in height until it gets opposite the Hannah property, where it is nine and one-half feet above the present grade of the street. Where it passes the store door it is four feet above the present door level. At the west end of the Nichols property the bridge will be nine and one-half feet above grade. The Nichols property has no outlet except on Walnut avenue and

on a sixteen foot alley on the east. The proposed bridge will raise the street grade an average of twelve and one-half feet above the street grade of the Nichols property.

The alleged misconduct of the commissioners consisted in the action of Commissioner N. W. Phelps in talking with several real estate men before and after the award was made about the value of the lots. It appears from the evidence that the opinions of these men made little, if any, impression upon Phelps and that he never mentioned the matter to either of his co-commissioners; that in agreeing to the award the commissioners took into consideration all the evidence introduced before them and the view of the property by the commissioners; that when each commissioner wrote down the amount the property was damaged, in his judgment, they were nearly together in their estimates; and that, in order to be entirely fair, they made the award larger than the average of the estimates made by the individual commissioners.

[7, 8] It is true as a general proposition that it is improper for commissioners to receive evidence upon the merits of the case in the absence of the complaining party, and that where the party has been prejudiced by such conduct the findings of the commissioners will be set aside. But, under the circumstances of this case, we find nothing in the conduct of Commissioner Phelps which would justify us in holding that the parties were prejudiced thereby.

[9] The court cannot set aside the award of the commissioners simply because the damages seem to be inadequate. To warrant such action the inadequacy must be so great as to evince a misconception of the principles governing the case, prejudice, or corruptions, on the part of the commissioners. As was said by

the court in *Fonticello Mineral Springs* v. *City of Richmond*, 147 Va. 355, 137 S. E. 458: "Where the proceeding is conducted according to law, and the evidence as to what would be just compensation for the property to be taken is in conflict, this court cannot set aside the finding of the commissioners, unless they proceeded upon erroneous principles, or unless the amount allowed is so grossly inadequate as to show prejudice or corruption on the part of the commissioners. They may base their findings largely upon the facts obtained by a view of the property which do not appear in the record."

In *Shoemaker* v. *United States*, 147 U. S., at page 306, .3 S. Ct. 361, 393 (37 L. Ed. 170), the law is stated thus: "The commissioners hear the evidence and frequently make their principal evidence out of a view of the premises, and this evidence cannot be carried up so as to correct the report as being against the weight of evidence. Hence, for an error in the judgment of commissioners in arriving at the amount of damages there can be no correction, especially where the evidence is conflicting. Commissioners are not bound by the opinions of experts or by the apparent weight of evidence, but may give their own conclusions."

In *Barnes* v. *Tidewater Ry. Co.*, 107 Va. 263, 58 S. E. 594, we find this: "Where commissioners in condemnation proceedings have heard the evidence of the witnesses offered, and have also viewed the premises, their findings as to amount of the damages which landowners will sustain are entitled to great weight, and will not be disturbed by the courts except upon clear evidence that their estimates were excessive or inadequate. For error of judgment in arriving at the amount of damages, if any, there can be no correction, especially where the evidence is conflicting, unless the

damages allowed are so excessive or inadequate as to show prejudice or corruption. The commissioners are not bound by the opinions of experts or the apparent weight of the evidence, but may form their own conclusions."

[10] On the amount of damage resulting to the lots of Hannah and Nichols, the evidence is very conflicting. The commissioners are prominent citizens of the city of Roanoke whose honesty and integrity are not questioned. They heard the evidence of all the witnesses, viewed the premises and awarded such sums as they believed would justly compensate the condemnees for the damages done to their respective properties by the construction of the proposed bridge and its approaches. Although the members of the court, if on the commission, might have reached a different conclusion, we do not find any reversible error in the awards made by the commissioners.

For the reasons stated, the judgment of the court sustaining the action of the commissioners will be affirmed.

*Affirmed.*