# Richmond

## THOMAS JACKSON RUDACILLE v. STATE COMMISSION ON CONSERVATION AND DEVELOPMENT, ETC.

January 15, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Gregory, JJ.

810

*John H. Downing* and *Holmes Hall,* for the appellant.

*Weaver & Armstrong,* for the appellee.

HOLT, J., delivered the opinion of the court.

By an act of the General Assembly, approved March 17, 1926, Acts 1926, page 307, there was created "as an agency of the Commonwealth," a body corporate under the style of "State Commission on Conservation and Development." That Commission was vested with the power of eminent domain, and was directed to report to the Governor some

practical plan looking to the establishment of a public park within the Blue Ridge Mountain area of this State.

By Act of Congress of May 22, 1926 (16 U. S. C. A. sections 403 to 403c), provisions were made for acceptance by the Federal government of title to lands in Virginia and in North Carolina and in Tennessee, the lands in Virginia to be known as the Shenandoah National Park, and those in North Carolina and Tennessee as the Great Smoky Mountain National Park; it being the intention of the general government to hold and develop them as national parks when title therefor had been tendered and accepted.

As a part of this general scheme, the legislature, by an act approved March 22, 1928, Acts 1928, page 983, known as the "national park act," again gave to the State Commission on Conservation and Development the power of eminent domain. When that Commission had acquired title to land within the proposed boundaries of the park by condemnation, purchase, or otherwise, it was vested also with power to transfer it to the United States of America, to be held by it as a public park.

By an act of the General Assembly, approved March 23, 1928, Acts 1928, page 1036, known as "public park condemnation act," detailed provisions were made for proper procedure in condemnations where land is sought to be acquired for park purposes.

Their constitutionality is challenged in this suit by the plaintiff, who owned a farm within the proposed park boundaries. He seeks perpetually to enjoin this Commission from all acts looking to its condemnation, and to have them declared void as unconstitutional, as repugnant to sections 6, 11, 58, 63 and 88 of our State Constitution, and to the fourteenth amendment to the Federal Constitution.

█ █ In our approach we should bear in mind certain elementary propositions. The right of eminent domain is

an attribute of sovereignty, here not limited except to the extent that Virginia has seen fit to limit herself by constitutional provisions or by provisions of the Federal Constitution which she undertook to observe when she became a member of these United States. Moreover, there is a strong presumption in favor of the constitutionality of all statutes.

■ We shall first examine the act, Acts 1928, page 1036, under which this condemnation was begun. It is general in its terms and applies to all who are authorized by the laws of this State to acquire land for public park purposes, and so does not run counter to section 63 of our Constitution (*Ex parte Settle*, 114 Va. 715, 77 S. E. 496), although it is true that this Commission on Conservation and Development is the only entity we have clothed with any such power. Though corporate in form, it is but the State itself, working through an instrumentality of its own choosing.

■ Section 58 of our Constitution provides that private property shall not be taken for public uses without just compensation; that the use must be public is fundamental.

Here the land to be taken is "for use as a public park and for public park purposes."

A public park is a public use. Va. Constitution, section 185; *Shoemaker* v. *United States*, 147 U. S. 283, 13 S. Ct. 361, 37 L. Ed. 170; *Lynnfield* v. *Peabody*, 219 Mass. 322, 106 N. E. 977; Lewis on Eminent Domain, section 175; Corpus Juris., Vol. 20, page 587.

■ It is next said that the landholders affected should not be convened in one proceeding. It appears that there are something like two thousand of them living within the proposed park area. Individual petitions would be needlessly expensive and would serve no good purpose. All that can be asked is that there be in each case a separate assessment of damages. *Hannah* v. *City of Roanoke*, 148 Va. 554, 139 S. E. 303; *Kohl, et al* v. *United States*, 91 U. S. 367, 23 L. Ed. 449.

■ It is said that the act "provides for the taking of private property * * * without paying just compensation therefor."

With elaboration of detail, procedure is provided for its ascertainment, and it is expressly declared that title shall not pass until the sum so found to be due shall have been paid into court. Indeed, in section 12, provision is made for the judgment of a jury on its *quantum*, although appellant does not now claim that he is under the Virginia practice entitled to a jury trial.

■ Complaint is also made of the manner in which process is served. Primary provision is made for publication once a week for four successive weeks in some newspaper published within the county wherein the land is located, or in two newspapers published in adjoining counties. This publication is to be posted at the front door of the court house, and a copy of it is to be mailed to those in interest whose addresses are known. Personal service of notice is not necessary. Notice by publication is sufficient. *Huling* v. *Kaw Valley Ry. & Improvement Company*, 130 U. S. 559, 9 S. Ct. 603, 32 L. Ed. 1045; *In re Condemnation Suits by United States* (D. C.) 234 Fed. 443; Lewis on Eminent Domain, section 378; this because the proceeding is *in rem* and not *in personam*.

■ ■ Plaintiff also contends that the appraisal commissioners need not be ·disinterested. They are not in terms required to be, and that is not necessary; it is to be presumed. They must be citizens of the judicial circuit wherein the proceedings are, or of some adjoining circuit, but not of the county in which the land is. These provisions themselves are in the interest of fair dealing. *Suncrest Lumber Co.* v. *North Carolina Park Commission* (D. C.) 30 Fed. (2d) 121. Any person who had the right to be heard as to the value of the estate to be taken may object to the commissioners and request that the proceedings be suspended, and they are thereupon automatically

suspended until the further order of the court. Their findings are subject to exception and will not be sustained where fraud, corruption, partiality, or gross error in judgment appears.

As a further objection it is claimed that there is not money in hand sufficient to satisfy these condemnation judgments when entered.

To this claim there are two sufficient answers. It is not set up in the bill. It is there said that the "Commission has not as yet instituted any condemnation proceedings under the provisions of the said act, but on the contrary it announces and proclaims that it is its purpose to ascertain first whether or not lands embraced within said area may be acquired with the funds at its disposal for use in such acquisition," and is now undertaking to secure this information. It does state that after taking all of these commendable precautions it would not proceed to take up options or to confirm conditional judgments by payment, if its judgment as to values should prove to be at fault and its funds insufficient. Certainly there is nothing wrong in this.

Moreover, the landowner is not deprived of the use of his land until it is taken. *State Highway Commissioner* v. *Kreger*, 128 Va. 203, 105 S. E. 217.

In *Suncrest Lumber Co.* v. *North Carolina Park Commission* (D. C.) 30 Fed. (2d) 121, 125, the court said: "But even if the funds now available were inadequate for acquiring the lands in the park area, it would by no means follow that the statute authorizing condemnation proceedings is unconstitutional, or that such proceedings should be enjoined. It is true that a statute which authorizes the taking of land and provides no adequate fund for making compensation is unconstitutional. * * * But this rule has no application where, as here, the title is not taken until compensation is paid, * * * and objection is merely

that the appropriation made is not adequate. In such case the owner is not divested of his property until he is paid for it, and it must be assumed that if the State desires the property it will make a sufficient appropriation."

"The mere fact that Congress limited the amount to be appropriated for the purposes indicated does not render the law providing for the taking of the land invalid." *United States* v. *Gettysburg Electric Ry. Co.*, 160 U. S. 668, 16 S. Ct. 427, 40 L. Ed. 576.

"The intention expressed by Congress, not to go beyond a certain aggregate expenditure, cannot be deemed a direction to the appraisers to keep within any given limit in valuing any particular piece of property. It is not unusual for Congress, in making appropriations for the erection of public buildings, including the purchase of sites, to name a sum beyond which expenditure shall not be made, but nobody ever thought that such a limitation had anything to do with what the owners of property should have a right to receive in case proceedings to condemn had to be resorted to." *Shoemaker* v. *United States*, 147 U. S. 282, 302, 13 S. Ct. 361, 391, 37 L. Ed. 170.

It is not to be presumed that Virginia will take from the plaintiff his property without just compensation.

It is also said that landowners are deprived of the right of appeal, except on constitutional questions, such as is guaranteed to them by section 88 of our Constitution.

In *Flanary* v. *Kane*, 102 Va. 547, 46 S. E. 312, 681, Judge Buchanan rightly held that this section did not, *proprio vigore*, confer jurisdiction upon this court, but merely gives to it the capacity to receive jurisdiction.

The right of appeal is no part of due process of law. All that a litigant can ask is that in some appropriate way, before some duly constituted tribunal, his compensation shall be determined. *Backus* v. *Fort Street Union Depot Co.*, 169 U. S. 557, 18 S. Ct. 445, 42 L. Ed. 853; *United*

*States* v. *Heinze*, 218 U. S. 532, 31 S. Ct. 98, 54 L. Ed. 1139, 21 Ann. Cas. 884; *Richmond Cedar Works* v. *Harper*, 129 Va. 484, 106 S. E. 516.

It is provided that in the petition upon information and belief the value of the estate sought to be taken may be charged and that such charge shall be taken as conclusive unless it be denied by some person in interest. Process in these proceedings is by publication, and this, in substance, provides for a judgment by confession. This cannot be done. *Jeffries* v. *Jeffries' Ex'or*, 123 Va. 147, 96 S. E. 197. But such a procedure is expressly optional. It need not be adopted and it should not be. It can be stricken from this act without impairment of its unity or purpose. That might be done under general law, and provision is expressly made for such a contingency in its section 42.

In the accomplishment of the major purpose running through all of these statutes and culminating in this litigation much time is necessary, but that is inevitable as are the hardships which some landowners must undergo. Homes will be lost, dear beyond pecuniary compensation. All of this is attendant upon the exercise of the power of eminent domain, and while it is to be regretted it cannot be avoided.

During the progress of various condemnation proceedings which may be instituted under this public park condemnation act, other defects may be uncovered. We can only say that there are none so fundamental as to make it void. Since it is valid legislation, the State, acting through its designated agent, will in all probability acquire title to a large section of land in the northern reaches of the Blue Ridge Mountains, suitable for use as a public park and for public park purposes. That the Commonwealth has the right to take over by eminent domain or otherwise such lands for such purposes is not open to serious question and this is all that the act of March 23, 1928, and the act

of March 17, 1926, do or purport to do. They do not present a case in which private property is sought to be condemned ostensibly for some public purpose that it may afterwards be diverted to private use. That cannot be done. *Richmond* v. *Carneal*, 129 Va. 388, 106 S. E. 403, 14 A. L. R. 1341. Here the purpose is public and so remains.

■ ■  After the State has in this manner taken title, it will doubtless avail itself of the privilege expressed in another statute, namely, the national park act, approved March 22, 1928 (Acts 1928, chapter 371), and convey it to the Federal government, to be held and maintained forever as a public park for all the people, and so ·we come in due course to its consideration.

Plaintiff charges that it is unconstitutional, in that through it the State undertakes to exercise the right of eminent domain, not for itself, but for another, namely, the Federal government.

The property in controversy can be taken over by the State for park purposes, under the act of March 17, 1926, and that of March 23, 1928, even though the act of March 22, 1928, had never been passed. A statute that is constitutional is not made unconstitutional by some other separate act of the legislature.

Very much the same question arose in the establishment of the Great Smoky Mountain National Park in North Carolina. *Yarborough* v. *Park Commission*, 196 N. C. 284, 145 S. E. 563, 568. The court there said: "The appellant's contention that the General Assembly cannot vest in the Federal government the power of eminent domain is based upon an erroneous assumption. The act in question does not purport to confer such power. In section 18, the defendant, as an agency of the State, is given the power to acquire land and other property, not for itself, but in the name of and in behalf of the State of North Carolina. As an individual entity, or a corporate body, the defendant

cannot acquire title to land by instituting a proceeding for condemnation. It is exclusively an agency of the State; it may acquire title only in the name of the State. Section 3. This provision is not impaired by the fact that the State is authorized to cede the acquired property to the Federal government in consideration of the public benefit to be derived from the establishment of a national park. There is no transfer of sovereignty from the State to the Federal government."

This is the exact situation which meets us here. When title has once been acquired, the State can convey it to the general government for any proper purpose.

For the sake of argument, let us assume that all of this legislation is but one act, and that the State is undertaking to condemn property, not directly for its own purposes, but that it may be turned over to the Federal government for use as a public park. It is said that this cannot be done, and we are cited to *People* v. *Humphrey*, 23 Mich. 471, 9 Am. Rep. 94. It there appears that Michigan undertook to sequestrate a tract of land within its boundaries that it might convey it to the United State for a lighthouse site. Judge Cooley held that this could not be done, and that Michigan could exercise the right of eminent domain only for itself and not for another.

It is proper that we should accord to every decision of that great judge the utmost consideration, but the Michigan case does not, in some important respects, conform to this. It was there said: "It is suggested by the eminent counsel for the relator that the proceeding may be sustained on the ground of the interest of the State, by reason of its coast-wise commerce, in the establishment of lighthouses upon these waters. But the act does not proceed on any theory of State interest. It assumes that the taking is to be for the United States exclusively. It is not necessary for us to consider, therefore, what might be the result were the theory of the act different."

This intimation is of importance, as will be seen when we come to examine *Lancey* v. *King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817, *infra*.

Here the dominant purpose has been to benefit our own people. Naturally, those who live near the park will use it most. To a lesser extent people from other States will likewise avail themselves of its privileges, but it is not for them primarily that we are undertaking to condemn the property of our citizens. Their pleasure is a desirable incident of the undertaking, but from the standpoint of this Commonwealth it is nothing more.

In *Reddall* v. *Bryan*, 14 Md. 444, 74 Am. Dec. 550, it was held that the State of Maryland might authorize the taking of water to supply the city of Washington.

In *Gilmer* v. *Lime Point*, 18 Calif. 229, it was held that the legislature of California had power to authorize the United States government, acting through an agent, to take lands for fortifications.

In *Burt* v. *Merchants' Ins. Co.*, 106 Mass. 356, 8 Am. Rep. 339, it was held that Massachusetts might delegate to an agent of the United States the right of eminent domain for the purpose of obtaining land in that State as a site for a post office.

*Lancey* v. *King County*, 15 Wash. 9, 45 Pac. 645, 646, 34 L. R. A. 817, was a case in which it appeared that the State of Washington gave to the Federal government power to condemn ground necessary in the construction of a canal. The court there said: "The remaining objection to the act, and the one most strongly insisted upon by the appellants, is that the act authorizes the exercise of the State's eminent domain for the use and benefit of the United States. But this is hardly a fair statement of the proposition. While it is proposed to convey the right of way, when obtained, to the United States, the improvement is for the use and benefit of the general public, and in a much

greater degree for the citizens of that locality. It is not to be occupied and controlled by government agents, like a fort, but is for everybody's use as a great public highway, and the control by the general government is only to regulate that use for the general good, and it matters little by whom this is done. The essential character of the work as a local public improvement, directly connected with the commercial business of the citizens of the county, cannot be taken away from it, even though it has a considerable value to the general government for naval purposes and otherwise. It is apparent that the character of the work cannot be essentially altered by its ownership or control, and it is immaterial whether the United States or the county prosecutes the enterprise, or whether they do so jointly."

This reasoning applies with telling force to our case.

In *Rockaway Pacific Corporation* v. *Stotesbury* (D. C.) 255 Fed. 345, 346, it was held: "Laws N. Y. 1917, chapter 13, providing for condemnation of private property for public defense, is not invalid because of a provision that property condemned might be turned over to the Federal government, even though the State cannot authorize the exercise of eminent domain, except for the use of its own sovereignty, and the Federal government, in the exercise of its distinct sovereignty, may condemn property needed." (Headnote 6.)

Moreover, the Federal government may directly exercise this power of condemnation whenever it is necessary or appropriate to use the land in the execution of any of the powers granted to it by the Constitution. *Kohl* v. *United States, supra; United States* v. *Gettysburg Electric Ry. Co., supra.*

In *United States* v. *Graham and Irvine* (D. C.) 250 Fed. 499, 502, the court, in construing the act of August 1, 1888, chapter 728, 25 Stat. 357, U. S. Comp. Stat. Anno., sections

6909, 6910, 6 Fed. Stat. Anno., pages 700–703 (40 U. S. C. A. sections 257, 258), and the "Weeks act" of March 1, 1911, 36 Stat. 961, chapter 186, 5 U. S. Comp. Stat. Anno., sections 5174–5187, in connection with the act of the General Assembly of Virginia of March 22, 1916, Acts 1916, page 793, held that the right of the Federal government to acquire land by condemnation for forestry reservations "has been too long and thoroughly settled to justify discussion." Moreover, the general statutes of Virginia Code, sections 19 and 4388-a *et seq.*, give this power in express terms, and their constitutionality has not been challenged. A forest reservation is no more necessary than is a public park, indeed not so much. The park itself is a forest reservation and will, in addition, subserve other public purposes sufficient in themselves to warrant its establishment. If Virginia may authorize the Federal government to condemn in the one case, it may do so in the other. In each instance it is her citizens who receive in major measure the benefits which follow from its establishment within her boundaries. This is no transfer to some foreign power. Virginia is part of these United States.

If she may effect this condemnation through another, then she may accomplish the same results through direct action. She can herself do anything which she has power to do through an agent.

"Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional." *M'Culloch* v. *Maryland*, 4 Wheat. 316, 421, 4 L. Ed. 579.

██ It is also said that all of this work and expense may go for naught, because the Secretary of the Interior is authorized to accept title in his discretion. We do not understand that this discretion vested in him is arbitrary.

It is his privilege and duty to inquire into the completeness with which preliminary congressional requirements have been met, and we think the entire act makes plain his duty to accept this park area when he is satisfied that Virginia has done everything stipulated for by Congress; if he did not, Virginia would still have a park well worth what she paid for it.

We have covered, we think, all of the major objections urged to the legislation in judgment. The questions raised, in principle, came before the North Carolina Supreme Court and the United States District Court for the Western District of North Carolina, three judges sitting, Parker, J., presiding. It was held that the act there under judgment violated neither the Constitution of North Carolina nor the Constitution of the United States.

This, we think, is true of these Virginia statutes, subject to an exception noted. Proof of the value of land to be taken should be produced in every case. It is not sufficient that the condemnor state in its petition an estimate of what that sum should be. No judgment by way of confession can be entered on such a statement. With this single modification, we think that the acts are valid and that the opinion of the trial judge fairly states the facts and conclusions which should be deduced therefrom, and properly disposes of the controversy. The trial court refused to enjoin all proceedings for condemnation under the act.

We find no error in the decree of the court below and it is therefore affirmed.

*Affirmed.*

EPES, J., concurring:

I concur in the dismissal of the plaintiff's bill, and in the conclusion reached in the opinion of Holt, J., that the provision of the "public park condemnation act" (Acts 1928, chapter 410) is invalid which provides that in a condemnation

proceeding based upon an order of publication the property may be condemned without other proof of its value than the allegations in the petition.

I am of the opinion that under the "public park condemnation act" (Acts 1928, chapter 410) a valid condemnation may be had; and that, therefore, if some of its provisions be unconstitutional, this does not constitute a valid ground for granting the injunction here prayed for. (See section 42, chapter 410, Acts 1928.)

This being so, I do not deem it necessary here to pass upon the many other objections raised to specific provisions of the said "public park condemnation act," and I express no opinion thereon.